UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

GEORGE T. ABRAHAM,

          Plaintiff,

   - against -

NEW YORK CITY DEPARTMENT OF EDUCATION,

          Defendant.

----------------------------------------X

FOR ELECTRONIC
PUBLICATION ONLY

MEMORANDUM & ORDER

06-CV-1053 (KAM) (LB)

MATSUMOTO, UNITED STATES DISTRICT JUDGE:

      Pending before the court is defendant New York City
Department of Education's ("defendant" or "DOE") motion for
summary judgment, pursuant to Federal Rule of Civil Procedure
56, seeking dismissal of plaintiff's action alleging employment
discrimination in violation of Title VII of the Civil Rights Act
of 1964, as amended, 42 U.S.C. §§ 2000, *et seq.* ("Title VII"),
New York State Executive Law §§ 290, *et seq.* ("NYSEL") and New
York City Human Rights Law, Administrative Code § 8-107
("NYCHRL").  For the reasons set forth herein, defendant's
motion is granted and plaintiff's First Amended Complaint is
dismissed in its entirety.

## BACKGROUND

      The following facts, taken from the parties'
statements pursuant to Local Civil Rule 56.1, are undisputed
unless otherwise indicated.  The court has considered whether

the parties have proffered admissible evidence in support of their positions and has viewed the facts in a light most favorable to the nonmoving plaintiff.

Plaintiff George T. Abraham ("plaintiff" or "Abraham") is an individual of Indian national origin, brown skin, and the Asian race, who holds a Bachelor's degree in electrical engineering. (Doc. No. 38, Declaration of Andrez Carberry, Esq., dated March 31, 2008 ("Carberry Decl."), Ex. B, Excerpts from the Deposition of George T. Abraham ("Pl. Dep.") at 35-38, 70.) Plaintiff began working for defendant in January 1986 as a Supervisor of Building Maintenance in defendant's Division of School Facilities ("DSF"). (Pl. Dep. at 24-25.) In or about June 1998, plaintiff was promoted to General Supervisor of Building Maintenance. (*See* Doc. No. 36, Defendant's Local Civil Rule 56.1 Statement of Undisputed Facts ("Def. 56.1 Stmt.") ¶ 3; *see also* Doc. No. 43, Plaintiff's Statement of Disputed Facts Pursuant to Rule 56.1 ("Pl. 56.1 Stmt.") ¶ 3.) Thereafter, on or about April 24, 1998, plaintiff's position was reclassified to Supervisor of Electrical Installation and Maintenance Level II. (*See* Def. 56.1 Stmt. ¶ 4.)

In October 2004, in an effort to streamline its operations, DSF created six "regions" and announced vacancies for six newly created supervisory positions, Regional Contract

Manager ("RCM"). (*Id.* ¶¶ 5, 11; *see* Doc. No. 39, Declaration of William Wilson, dated March 31, 2008 ("Wilson Decl."), Ex. D, Job Posting.) According to defendant, the "primary requirement for the RCM position was a candidate's general knowledge of the work performed at DSF and the supervisory skills necessary to manage those with specific experience in various disciplines involved in construction." (Def. 56.1 Stmt. ¶ 13.) The job posting indicates that the RCM position, among other things, would be responsible for overseeing the repair and maintenance of school facilities and equipment, supervising personnel performing any such work, and reviewing design and/or preparing other documents for project planning and execution. (*See* Wilson Decl., Ex. D.)

The RCM job posting listed the minimum qualifications as follows:

> To qualify you must be in the civil service title of construction project manager, associate project manager, supervisor electrical installation and maintenance, supervisor of mechanical installation and maintenance, engineer (civil, mechanical or electrical), senior estimator (construction, mechanical or electrical) or architect. In addition, all candidates must have a minimum of two (2) years supervisory experience and the following: effective communication and negotiation skills; experience in the contracting procedures of the Division of School Facilities; specific experience with PassPort Contracting and Work Order Modules; experience with Requirements Contracts and Job Order Contracting (JOC); and knowledge of Service Contracts procedures.

(Wilson Decl. ¶ 8 and Ex. D.)  The job posting for the RCM position did not require an engineering degree.  (*See* Wilson Decl., Ex. D.)

Defendant requested that all applications for the RCM position be submitted by November 30, 2004.  (Def. 56.1 Stmt. ¶ 6; Wilson Decl., Ex. D.)  Plaintiff timely submitted an application.  (Def. 56.1 Stmt. ¶ 6.)

Plaintiff was among 26 candidates that met the minimum qualifications for the RCM position.  All 26 candidates[1] were individually interviewed by a panel of DOE managers comprised of DSF employees and personnel from defendant's Human Resources Office of School Support Services.  (Def. 56.1 Stmt. ¶¶ 19-20.)

The panel asked each candidate seven identical questions and each panel member assigned each candidate a score between 1-10 based on the candidate's responses to the questions.[2]  (Def. 56.1 Stmt. ¶ 26.)  Although plaintiff does not

_____

[1] The parties agree that at least 26 candidates met the minimum qualifications for the RCM position and were interviewed. Whereas Defendant's Rule 56.1 Statement indicates that 27 candidates met the minimum qualifications, plaintiff "does not dispute that 27 employees were qualified" and "agrees that 26 candidates were interviewed . . . ."  (*Compare* Def. 56.1 Stmt. ¶ 19 *with* Pl. 56.1 Stmt. ¶ 19.)

[2] The panel asked the following questions:

> 1. How [sic] you structure and/or organize your
>    new position and department as Regional

dispute that the questions were asked, he "denies that the seven questions asked at the interview could measure an applicant's 'job related knowledge' or 'supervisory capabilities.'" (Pl. 56.1 Stmt. ¶ 26.) Instead, plaintiff contends that the questions were "very general" and "not at all related to the duties performed by contract managers." (Doc. No. 44, Affidavit of George T. Abraham ("Abraham Aff.") ¶ 8.)

According to defendant, the candidates were scored on the basis of their answers to the seven questions and on the interviewers' assessments of the candidate's "appearance, enthusiasm, job-related knowledge, supervisory capabilities and

---

Contract Manager in this organization?

2. What steps would you take to insure accountability of the employees assigned to you?

3. How would you address problems with an employee related to productivity?

4. How would you address issues with quality of work of the employee and contractor?

5. What would you do if one of your inspectors believe there was hazardous material in the school and reported this belief to you?

6. What do you do if you suspect an impropriety regarding a contractor, inspector or custodian?

7. Describe for us the steps you would take to evaluate a proceed order in areas of [sic] which you are not familiar?

(Wilson Decl., Ex. M.)

verbal skills." (Def. 56.1 Stmt. ¶ 26.) Plaintiff agrees that "the interviewers could . . . evaluate the applicant's appearance, enthusiasm and verbal skills during the interview." (Pl. 56.1 Stmt. ¶ 26.)

Based on the averaged scores assigned to each of the 26 candidates, it is undisputed that plaintiff scored a 3.4 on the interview and "ranked twenty-fourth (24) on the list of twenty-six (26) eligible candidates." (Def. 56.1 Stmt. ¶ 29.) Based on the candidates' scores, and following "a review of each applicant's background as set forth in their applications[,] . . . a list of the top thirteen candidates" was presented to DOE managers. (Def. 56.1 Stmt. ¶ 33.)

According to defendant, four individuals with the highest scores on the interview were selected for the position. (Pl. 56.1 Stmt. ¶34.) The remaining two RCM positions were awarded to Richard Militello, who ranked eighth, and Paul Buccellato, who ranked thirteenth. (Def. 56.1 Stmt. ¶ 35.)

Of these six successful candidates hired, five were Caucasians of American national origin. (*See* Pl. 56.1 Stmt. ¶ 34; Wilson Decl. ¶¶ 21-22 and Ex. N.) Plaintiff asserts that the interview scores of least two non-Caucasian-Americans, Raj Vohra, of Indian national origin, and Naser Hamoudeh, of Egyptian national origin, were equal to or higher than

Militello's, and that a total of eight candidates were not hired despite having received interview scores equal to or higher than Buccellato's. (Abraham Aff. ¶ 14; Pl. 56.1 Stmt. ¶ 35; *see* Wilson Decl., Ex. N.) Plaintiff asserts that he "heard rumors" that the successful candidates were "pre-selected" and that the interview process "was just an excuse to promote" certain individuals. (Abraham Aff. ¶¶ 10, 12.)

Shortly after beginning work as an RCM, Mr. Buccellato left the position due to illness. (Def. 56.1 Stmt. ¶ 36.) As a result, DSF employees conferred and, without conducting any additional interviews, selected Mr. Hamoudeh to fill the vacancy. (Pl. 56.1 Stmt. ¶ 36; Def. 56.1 Stmt. ¶ 36; Carberry Decl., Ex. K, Excerpts from the Deposition of Michael Fiore ("Fiore Dep."), at 51-52.) Mr. Hamoudeh had received the same score as Mr. Militello, and had scored higher than Mr. Buccellato. (Pl. 56.1 Stmt. ¶ 36; *see* Wilson Decl., Ex. N.) Plaintiff claims that Mr. Hamoudeh's promotion to the RCM position was a result of plaintiff's filing of a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on March 22, 2005.

In his EEOC charge, plaintiff, *inter alia*, alleged that he had been denied the RCM position and other promotions because of his national origin and "dark" skin. (Carberry

7

Decl., Ex. S, Charge of Discrimination.)  On December 22, 2005
the EEOC concluded, following an investigation, that the "record
is absent of any evidence to suggest that your race, color and
national origin were factors in Respondent's [defendant's]
decision-making processes."  (Carberry Decl., Ex. S, EEOC
Letter, dated December 22, 2005, at 1.)

On or about April 3, 2005, plaintiff requested unpaid
leave pursuant to the Family Medical Leave Act ("FMLA"), which
was subsequently authorized by defendant.  (Pl. 56.1 Stmt. ¶ 8;
Def. 56.1 Stmt. ¶ 8; Carberry Decl., Ex. H, Email from George T.
Abraham to William Wilson, dated April 3, 2005).  Thereafter, on
March 23, 2006, while on FMLA leave, plaintiff advised
defendant, in writing, that he wished to resign from his current
position of Supervisor of Electrical Installation and
Maintenance Level II.  (Pl. 56.1 Stmt. ¶ 9; Def. 56.1 Stmt. ¶ 9;
Carberry Decl., Ex. I, Letter from George T. Abraham to Raji
Natarajan, dated March 23, 2006.)

## DISCUSSION

### A. Standard of Review

A court may grant summary judgment only "if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* Moreover, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. General Elec. Co.*, 242

F.3d 78, 83 (2d Cir. 2001). Nevertheless, the nonmoving party
may not rest "merely on allegations or denials" but must instead
"set out specific facts showing there is a genuine issue for
trial." Fed. R. Civ. P. 56(e)(2); *see also Harlen Assocs. v.*
*Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)
("[M]ere speculation and conjecture is [sic] insufficient to
preclude the granting of the motion.")

      "Employment discrimination cases raise special issues
on summary judgment." *Kenney v. New York City Dep't of Educ.*,
No. 06-CV-5770, 2007 U.S. Dist. LEXIS 77926, at *7 (S.D.N.Y.
Oct. 22, 2007). Specifically, employment discrimination cases
that involve a dispute concerning the "employer's intent and
motivation," may not be suitable for summary judgment. *Id.* The
Second Circuit has noted, however, that "we went out of our way
to remind district courts that the impression that summary
judgment is unavailable to defendants in discrimination cases is
unsupportable." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 44
(2d Cir. 2000) (internal quotation marks omitted; citing cases);
*see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.
133, 147 (2000) ("trial courts should not 'treat discrimination
differently from other ultimate questions of fact.'") (quoting
*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524 (1993)). As
plaintiff observes, "a plaintiff 'is not entitled to a trial

simply because the determinative issue focuses on the defendant's state of mind.'"  (Doc. No. 46, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. MOL") at 7.) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

The parties agree that claims brought under Title VII for alleged discriminatory failure to promote are analyzed under the three-step burden shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).  (*See* Doc. No. 37, Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. MOL") at 5; Pl. MOL at 7-8.) Similarly, claims brought pursuant to the NYSEL and NYCHRL are analyzed in accord with the standards governing Title VII claims.  *Bang v. IBM Corp.*, No. 07-CV-292, 2009 U.S. Dist. LEXIS 18633, at *6 (E.D.N.Y. Feb. 23, 2009) (citing *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

Initially, the plaintiff bears the burden of establishing a prima facie case of discrimination.  To establish a prima facie case, the plaintiff must show that:  (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) such adverse employment action occurred under circumstances giving

rise to an inference of discrimination. *See Pathare v. Klein*,
No. 06-CV-2202, 2008 U.S. Dist. LEXIS 69119, at *12 (S.D.N.Y.
Sept. 12, 2008) (citing *Howley v. Town of Stratford*, 217 F.3d
141, 151 (2d Cir. 2000)). The Second Circuit has "characterized
this burden as 'de minimis:' it is 'neither onerous, nor
intended to be rigid, mechanized or ritualistic.'" *Beyer v.
County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting
*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d
Cir. 2001).

Once the plaintiff has established a prima facie case,
the burden shifts to the defendant to articulate a legitimate,
non-discriminatory reason for the alleged adverse employment
action. *McDonnell Douglas*, 411 U.S. at 802-03; *Pathare*, 2008
U.S. Dist. LEXIS 69119, at *12. Significantly, this "burden is
one of production, not persuasion . . . and involves no
credibility assessment of the evidence." *Id.* (citations
omitted). That is, at this stage, the employer "must present a
clear explanation for the action." *Id.* (citation omitted).

If the employer meets its burden, the plaintiff must
present evidence to show that the employer's reason is a mere
pretext for an impermissible discriminatory motive. *Id.* (citing
*Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000)); *McPherson
v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir.

2006).  "[T]he plaintiff is not entitled to judgment unless [he]
shows that the challenged employment decision was more likely
than not motivated, by unlawful . . . discrimination."  *Howley*,
217 F.3d at 150.

Defendant contends that plaintiff has not made out a
prima facie case and that, even if he has, plaintiff cannot show
that defendant's stated legitimate reasons for its decision not
to promote plaintiff are a pretext for unlawful discrimination.

## B. Plaintiff's Prima Facie Case of Discrimination

Plaintiff has satisfied his "de minimis" burden of
establishing a prima facie case for failure to promote based on
national origin, color and race discrimination.  With respect to
the first element of the prima facie analysis, plaintiff is a
member of a protected class based on his Indian national origin,
Asian race, and skin color.  (*See* Def. MOL at 6, n. 2.)
Regarding the second and third elements, it is undisputed that
plaintiff applied for a position for which he was qualified, and
was not selected, thus suffering an "adverse" employment action.
(Def. 56.1 Stmt. ¶¶ 17, 19.)

As to the fourth element, the court finds that the
non-selection of plaintiff occurred under circumstances
establishing an inference of discrimination sufficient to make
out a prima facie case of discrimination.  Although plaintiff's

13

score of 3.4 out of 10 following the interview process placed
him far below the top thirteen candidates that were presented to
DOE managers for additional review (*see* Def. 56.1 Stmt. ¶ 33),
the evidence indicates that the DSF failed to select candidates
who were of plaintiff's national origin, race and color and who
ranked higher than successful Caucasian American candidates.
(*See* Wilson Decl. ¶ 27 and Ex. N; Pl. 56.1 Stmt. ¶ 33.)  While
this evidence may be insufficient to sustain plaintiff's
discrimination claims at trial, when viewed in a light most
favorable to the nonmoving plaintiff, the promotion of lower-
ranked Caucasian American applicants ahead of candidates of the
plaintiff's national origin, race and color is sufficient for
purposes of defendant's summary judgment motion to constitute a
circumstance giving rise to an inference of discrimination.  *See*
*Pathare*, 2008 U.S. Dist. LEXIS 69119, at *13 (inference of
discrimination established where the defendant promoted lower-
ranked applicants who were not of the plaintiffs' national
origins).

   **C. Defendant's Legitimate, Non-discriminatory**
   **Reasons for the Adverse Employment Action**

          Defendant has satisfied its burden to articulate
legitimate, non-discriminatory reasons for it decision not to
promote plaintiff.  Defendant contends that all minimally
qualified candidates were scored on their interview performance,

based on their responses to the seven interview questions, as
well as other subjective factors such as appearance, enthusiasm,
job-related knowledge, supervisory capabilities and verbal
skills.  (Def. 56.1 Stmt. ¶ 26.)  Successful candidates were
ultimately selected based on a combination of the rankings and
consideration of their backgrounds as highlighted in their
applications.  (Wilson Decl. ¶¶ 20-21; Def. 56.1 Stmt. ¶ 30.)
According to defendant, "the primary consideration was the
supervisory and management skills of the candidate[,]" not
technical knowledge or educational degrees.  (Wilson Decl. ¶ 6;
Def. 56.1 Stmt. ¶ 13, 16.)

        Defendant's decision not to promote plaintiff based on
its conclusion that other candidates were better qualified
constitutes a legitimate, non-discriminatory reason for the
employment action.  Defendant's decision was based on subjective
criteria, which "are legitimate bases for promotion decisions,
as long as they are explained, as they are here, in clear and
specific terms." *Pathare*, 2008 U.S. Dist. LEXIS 69119, at *15
(citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 104 (2d Cir.
2001) (observing that "there is nothing unlawful about an
employer's basing its hiring decision on subjective criteria,
such as the impression an individual makes during an
interview.")) It is undisputed that all six positions were

filled with candidates who were ranked far ahead of plaintiff.
Plaintiff was eliminated from further consideration by failing
to rank among the thirteen candidates.  Accordingly, the initial
presumption of unlawful discrimination is rebutted and plaintiff
must present admissible evidence to show that defendant's
reasons are a mere pretext for an impermissible discriminatory
motive.  *See McPherson*, 457 F.3d at 216.

### D. Pretext

Plaintiff has failed to raise, through admissible
evidence, a genuine factual dispute as to whether defendant's
stated reasons for denying him the RCM position is a pretext for
unlawful discrimination based on national origin, race or color.[3]

---

[3] In addition to his own affidavit, plaintiff has submitted the
affidavit of Suresh Pathare, a DSF employee of Indian national
origin who had also unsuccessfully applied for the RCM position.
*See generally, Pathare*, 2008 U.S. Dist. LEXIS 69119, at *5
(noting that Mr. Pathare ranked eighteenth following the
interview process).  Defendant asserts that Mr. Pathare was not
disclosed pursuant to the initial disclosures mandated by Fed.
R. Civ. P. 26(a) or during the course of discovery and thus, his
affidavit should be stricken.  (Doc. No. 41, Reply Memorandum of
Law in Further Support of Defendant's Motion for Summary
Judgment ("Def. Reply MOL") at 6-7.)  If true, the court is
troubled by plaintiff's failure to disclose Mr. Pathare as a
potential witness as required by Fed. R. Civ. P. 26.

Fed. R. Civ. P. 37(c)(1) provides, in relevant part:

If a party fails to provide information or
identify a witness as required by Rule 26(a) or
26(e), the party is not allowed to use that
information or witness to supply evidence on a

Plaintiff claims that defendant's rationale for its decision not to promote him is a pretext for discrimination because the successful candidates allegedly were not as qualified as he was for the RCM position and because the interview process not only was an inadequate method for evaluating and ranking candidates, but was a sham. (*See* Pl. MOL at 10-12.)

Based on his interpretation of the job posting, and his opinions about the qualifications for the RCM position, plaintiff repeatedly argues that he was more qualified than the individuals who filled the RCM positions. Specifically, plaintiff argues that a successful candidate should have a background in mechanical, civil or structural, and electrical engineering. (Pl. 56.1 Stmt. ¶ 13; Abraham Aff. ¶ 11.) Plaintiff, who has a degree in electrical engineering, "contends

---

> motion . . ., unless the failure was
> substantially justified or is harmless.

This rule prevents a party from using information in summary judgment motions not previously disclosed to opposing counsel. *Fleming v. Verizon N.Y., Inc.*, No. 03-CV-5639, 2006 U.S. Dist. LEXIS 68632, at *22 (S.D.N.Y. Sept. 25, 2006).

Here, plaintiff offers no explanation why Mr. Pathare was not previously disclosed. Defendant contends that plaintiff's failure to disclosure Mr. Pathare has prejudiced defendant because it did not have an opportunity examine Mr. Patare during discovery. The court is not inclined to consider Mr. Pathare's affidavit. Even if the court considers Mr. Pathare's affidavit, the "evidence" presented therein is largely duplicative of plaintiff's affidavit and, in any event, does not present a genuine issue of material fact sufficient to warrant a trial.

that it is improper for a supervisor without a background in engineering to be reviewing the work of engineers." (Pl. MOL at 11-12.) Notwithstanding plaintiff's contention, it is undisputed that the posted "minimum selection criteria" did not include particularized education or experience in any engineering field, nor are educational degrees mentioned anywhere in the posting. (*See* Wilson Decl., Ex. D.)

Significantly, plaintiff does not argue that the successful candidates lacked the minimum qualifications as articulated by the DSF. Instead, plaintiff challenges the adequacy of the qualifications themselves. It is, however, well-established that "[s]etting minimum qualifications for a job title is typically a matter left to an employer's discretion, not one for judicial involvement." *Pathare*, 2008 U.S. Dist. LEXIS 69119, at *17 (citing *Howley*, 217 F.3d at 151); *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 313 (2d Cir. 1997) ("[W]e do not second-guess an employer's hiring standards. . . .")).

Moreover, even if it is true that plaintiff was more qualified than the successful candidates, a statement for which he has supplied only conclusory allegations, the court "must respect the employer's unfettered discretion to choose among

qualified candidates." *Byrnie*, 243 F.3d at 103.  As the Second

Circuit has held:

> When a plaintiff seeks to prevent summary
> judgment on the strength of a discrepancy in
> qualifications ignored by an employer, that
> discrepancy must bear the entire burden of
> allowing a reasonable trier of fact to not only
> conclude the employer's explanation was
> pretextual, but that the pretext served to mask
> unlawful discrimination. In effect, the
> plaintiff's credentials would have to be so
> superior to the credentials of the person
> selected for the job that no reasonable person,
> in the exercise of impartial judgment, could have
> chosen the candidate selected over the plaintiff
> for the job in question.

*Id.* (internal quotation marks and citation omitted).  Based on

the evidence before the court, it cannot be said that plaintiff

has satisfied this high burden.

The evidence reflects that defendant relied on each

applicant's qualifications to determine eligibility for

interviews, and then considered those qualifications in

conjunction with the applicants' performance in the interviews

in order to make a final selection.  This process was

permissible.  *See Lomotey v. Connecticut Dep't of Transp.*, No.

05-CV-1711, 2009 U.S. Dist. LEXIS 1765 (D. Conn. Jan 12, 2009).

As previously noted, defendant is entitled to select between

comparably qualified employees, may rely on any non-

discriminatory basis in doing so, and may consider subjective

factors such as interview performance as well as the candidates'

qualifications on paper in making its hiring and promotions decisions.  *See Pathare*, 2008 U.S. Dist. LEXIS 69119, at *15.

With respect to the interview process, plaintiff contends that the questions posed to the candidates could not have measured their job-related knowledge or supervisory capabilities, and that an inference of discrimination is warranted because the only remaining bases for scoring were "all very subjective." (*See* Abraham Aff. ¶¶ 8-9.)  Although the interview scoring involved subjective assessments of the candidates by the panel, the questions were focused on job-related knowledge and supervisory experience.  While it is undisputed that the interviewers did not directly ask about the candidate's work and technical experience, the hypothetical questions dealt "directly with RCM job functions and general supervisory scenarios.  These questions were clearly capable of eliciting responses that would allow the interviewers to assess a candidate's job-related knowledge and supervisory capabilities," and provided each candidate an opportunity to discuss his experience and qualifications.  *See Pathare*, 2008 U.S. Dist. LEXIS 69119, at *18-19. "Plaintiff's disagreement with Defendant's choice of questions is insufficient to raise a genuine issue as to whether Defendant's proffered explanation

that it based its hiring decisions on the interview process is pretextual." *Id.*, at *19.

Plaintiff also contends that the subsequent promotion of Mr. Hamoudeh to the RCM position to fill the vacancy created by Mr. Buccellato's illness demonstrates that the selection process was "tainted with discriminatory motive . . . ." (Pl. MOL at 9.) Plaintiff alleges that Mr. Hamoudeh, who is of Egyptian national origin, originally should have been selected because he ranked higher than Mr. Buccellato and received the same score as Mr. Militello, and that Mr. Hamoudeh was only subsequently selected in response to plaintiff's EEOC charge.

The fact that Mr. Hamoudeh was later promoted does not necessarily indicate unlawful bias in the selection process. Mr. Hamoudeh was never declared unsuitable in the initial process; in fact, he was highly ranked but was passed over in favor of a preferred candidate. As previously stated, defendant has articulated a specific rationale for the preference, namely, that successful candidates were ultimately selected based on a combination of their interview rankings and consideration of their backgrounds as detailed in their applications. Moreover, the undisputed record establishes that Mr. Hamoudeh was selected after a previously selected candidate left the RCM position. Plaintiff proffers no evidence whatsoever that the DSF

considered plaintiff's EEOC charge in making any personnel decisions.

Further, in light of the evidence concerning defendant's hiring process, plaintiff's contention of discriminatory motive in defendant's failure to hire persons of plaintiff's national origin, race or color is nothing other than mere speculation based entirely on plaintiff's personal opinion. Absent any evidence that national origin, race or color were considered in the promotion decision, a rational fact-finder could not conclude that the selection was based on unlawful discrimination.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is hereby granted in its entirety. The Clerk of Court is respectfully requested to enter judgment in defendant's favor, and close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
       April 30, 2009

_____  /s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York
